**IN THE COURT OF APPEALS OF IOWA**
No. 18-1239
Filed September 12, 2018

**IN THE INTEREST OF J.K. and S.K.,**
**Minor Children,**

**E.K., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Cherokee County, Mary L. Timko, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to her two minor children. **AFFIRMED.**

Theresa Rachel of Fankhauser Rachel, PLC, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Lesley D. Rynell of Juvenile Law Center, Sioux City, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A mother appeals the termination of her parental rights to her two minor children, born in 2007 and 2011. She argues: (1) the State failed to prove the statutory grounds for termination by clear and convincing evidence, (2) termination is not in the best interests of the children, (3) the juvenile court should have applied the statutory exception to termination contained in Iowa Code section 232.116(3)(c) (2018), and (4) the court erred in declining to grant her a six-month extension to work toward reunification.

I.      **Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Human Services (DHS) in late April 2017 upon information the mother was arrested for possession of methamphetamine and drug paraphernalia. The mother admitted to using methamphetamine and marijuana. In early May, a DHS worker conducted a home visit, during which the mother admitted to using methamphetamine and the father denied any drug use and any knowledge of drug use on the part of the mother. Shortly thereafter, the father tested positive for methamphetamine and amphetamine and the mother tested negative for drugs. The father later reported to DHS that he and the mother used a cleansing shampoo in order to manipulate the hair-stat test that was administered and it worked for the mother but not for him. The mother admitted the same in her testimony at the termination hearing. The father also readily admitted that he and the mother used drugs together.

The children were removed from the parents' care on May 11 and placed in foster care. The mother underwent a substance-abuse evaluation on May 22, but she refused to submit to a drug test at the evaluation center. Subsequent

revelations included that the parents' relationship involved verbal abuse and domestic violence, the family home was uninhabitable and neither parent was living in it, and both parents were drug addicts. In June, as a result of these revelations, the children were adjudicated to be children in need of assistance. In late June, the children were placed with a paternal aunt, where they remained for the remainder of the proceedings.

DHS requested the mother submit to drug testing on June 21, but the mother failed to appear. As a result of the mother's actions toward the father on June 28, she was charged with domestic abuse assault. The mother tested positive for methamphetamine use on July 10. She was admitted into an extensive outpatient treatment program on July 18. According to her discharge summary, the mother was inconsistent in attending treatment and minimally participated when she did attend. She eventually stopped attending treatment altogether and did not respond to attempts at contact by the treatment program. She was unsuccessfully discharged from the program.

The mother underwent a mental-health evaluation in August. The assessment report indicates the mother continued to use methamphetamine at the time she was evaluated. In late August, DHS discovered the mother began living with a known drug user. At the termination hearing, the mother admitted to living with a number of individuals during the proceedings with histories of drug use. On August 28, the mother tested positive for methamphetamine, amphetamines, and THC. Throughout the month of September, she evaded a number of random drug screens. Late that month, the mother was charged with possession of drug paraphernalia, along with a number of other crimes, as a result of a traffic stop in

which she attempted to evade police. The mother admitted to officers that she was in possession of a methamphetamine pipe. When officers located the pipe, it contained burnt residue.

On November 20, the mother tested positive for methamphetamine, amphetamines, MDMA, opiates, oxycodone, and THC. She reported she was taking Percocet and oxycodone at this time. The mother underwent another substance-abuse evaluation in late November, at which time she tested positive for methamphetamine and reported she used the same one to three times in the past month. She tested negative for drugs on three occasions in December and early January 2018. In early January, however, DHS received information that the mother was using someone else's urine to pass her drug screens. Staff at the treatment center reported it was against their policies to observe the provision of urine samples. A sweat-patch test was administered as to the mother from January 16 through 26. It came back positive for methamphetamine and amphetamines. In early 2018, the mother largely discontinued attending group therapy. She tested positive for methamphetamine and amphetamines on March 19, and she refused to submit to drug tests on March 27 and 29. On April 10 and May 14, the mother tested positive for marijuana use.

The record shows the mother continued to use illegal drugs throughout the entirety of these proceedings. In addition, she was unable to obtain consistent or suitable housing, although at the time of the termination hearing she recently rented a one-bedroom apartment. Furthermore, the mother was unemployed throughout the entirety of the proceedings, although she was "vigorously" searching for employment at the time of the termination hearing. Due to her

continued drug use and instability, the mother never progressed beyond fully supervised visitation with the children. The parents participate in an apparent on-again-off-again type of relationship that enjoys short stints of, at most, being able to tolerate one another, but suffers from explosive interactions of rage followed by long bouts of chaotic marital strife. It is undisputed that the parents and children share a bond. However, the children have also developed a bond with their relative caregiver. When initially placed in foster care, the children struggled. They are now thriving in their relative placement. The children are integrated into the home with their relative caregiver, who is prepared to adopt the children.

The State petitioned to terminate the parents' parental rights. Following a hearing, the juvenile court terminated both parents' rights pursuant to Iowa Code section 232.116(1)(d), (f), (i), and (*l*). Only the mother appeals.

## II. Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *A.M.*, 843 N.W.2d at 110). Our primary consideration is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

### A. Sufficiency of the Evidence

As noted, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (f), (i), and (*l*). The mother's sufficiency-of-the-evidence argument is limited to the following:

> Evidence at trial showed that [the mother] complied with [family safety, risk, and permanency] services, had partaken in substance abuse treatment, had begun participation in mental health services, and had exceeded expectations with regard to visitation. The State must prove the statutory grounds for terminating parental rights by clear and convincing evidence and did not.

Even if we were to accept this argument as factually correct, which is questionable, and sufficient to identify error on appeal, which it clearly is not,[1] we would conclude the State met its burden for termination under at least section 232.116(1)(f). *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence."). It is undisputed the children are four years of age or older, they have been adjudicated children in need of assistance, and they were removed from the parents' care for the last twelve consecutive months with no trial periods at home. *See* Iowa Code § 232.116(1)(f)(1)–(3). As to the final element, when asked at the termination hearing, "[D]o you think you could, realistically, have the children home today?" the mother responded, "No." *See id.* § 232.116(1)(f)(4). The remaining evidence supports the mother's testimony. The statutory grounds for termination under paragraph (f) were shown by clear and convincing evidence.

B.    Best Interests

The mother argues termination is not in the best interests of the children. "In considering whether to terminate the rights of a parent . . . [we] give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and

---

[1] *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review.").

emotional condition and needs of the child[ren]." *Id.* § 232.116(2). In support of her best-interests argument, the mother points to the "significant progress" she has made throughout the proceedings.

Upon our de novo review of the record, we are unable to characterize the mother's steps during these proceedings as either "progress" or "significant." The record shows the mother used illegal drugs throughout the proceedings and frequently lied about and attempted to conceal the same. As such, we give little credence to the mother's testimony that she was clean at the time of the termination hearing or that she would continue to be if her rights were not terminated.

Throughout the proceedings, the mother continued to use drugs and was unable to obtain employment or suitable housing.[2] Her inability to obtain and sustain sobriety, employment, or suitable housing has a direct and negative impact on her ability to provide for these children's safety; long-term growth; and physical, mental, and emotional well-being. "We hold no crystal ball, and to some extent, the [best-interests] determination must be made upon past conduct." *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa Ct. App. Dec. 21, 2016). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa

---

[2] We acknowledge that shortly before the termination hearing the mother obtained an apartment and was supposedly "vigorously" searching for employment, but a parent cannot wait until the eve of termination to begin to express an interest in parenting. *C.B.*, 611 N.W.2d at 495.

2010)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). That point has been reached in this case.

Furthermore, contrary to what the mother has been able to provide for these children since the commencement of these proceedings, the relative placement has provided these children with a home in which they are thriving, has integrated the children into that home, and is prepared to adopt the children and provide them with continued stability and permanency. Continued stability and permanency are in these children's best interests. *See* Iowa Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (Iowa 2016) (concluding termination was in best interests of children when children were well-adjusted to living with their foster parents; the foster parents were "able to provide for their physical, emotional, and financial needs"; and the foster parents were prepared to adopt the children).

C.     Statutory Exception

Next, the mother argues the statutory exception contained in Iowa Code section 232.116(3)(c) should be applied to preclude termination. "The court need not terminate the relationship between the parent and child if . . . there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of the statutory exceptions to termination is "permissive not mandatory." *M.W.* 876 N.W.2d at 225 (quoting *A.M.*, 843 N.W.2d at 113). "[T]he parent resisting termination bears the burden to establish an exception to termination." *A.S.*, 906 N.W.2d at 476.

The only evidence the mother provided concerning the application of this exception to termination was her own testimony: "I think that it would be detrimental to the boys' mental health if our rights were terminated. We do have a very strong bond with our children. I love them and miss them so much." We fully acknowledge the mother's bond with her children, but in light of the other evidence presented, we do not find the evidence clear and convincing to show termination will be detrimental to the children due to the closeness of that bond. The children had been out of the parents' care for more than a year at the time of the termination hearing and in their relative placement for more than a year when the termination order was entered. The children initially struggled in foster care, but they thrived in relative care and developed a bond with their paternal aunt. We agree with the juvenile court that the permissible exception to termination should not be applied in this case.

D.    Extension

Finally, the mother contends the juvenile court erred in declining to grant her an extension to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." Upon our de novo review, and based upon the mother's past performance and self-serving tendencies, we are unable to make a finding that the need for removal would no

longer exist after the mother's requested extension. We therefore affirm the termination of the mother's parental rights.

**IV. Conclusion**

We conclude the State presented sufficient evidence to support termination, termination is in the best interests of the children, the application of an exception to termination is unwarranted, and the mother is not entitled to an extension. We affirm the juvenile court order terminating the mother's parental rights.

**AFFIRMED.**